UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NATIONAL RAILROAD PASSENGER CORP.,    :

                                      :          06 Civ. 6072 (PAC) (GWG)

            Plaintiff,

                                      :

      -v.-                                       REPORT AND
                                      :          RECOMMENDATION
STEADFAST INSURANCE COMPANY,
GREAT AMERICAN E&S INSURANCE          :
COMPANY, RSUI INDEMNITY COMPANY,
ZURICH INSURANCE COMPANY,             :
HARTFORD FIRE INSURANCE COMPANY,
AMERICAN GUARANTY & LIABILITY         :
INSURANCE COMPANY, and ARCH
SPECIALTY INSURANCE COMPANY,          :

            Defendants,                :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff National Railroad Passenger Corp. ("Amtrak") moves for summary judgment

against defendant Steadfast Insurance Company ("Steadfast") seeking a declaration that

Steadfast is required to defend and indemnify it pursuant to two insurance policies.  Steadfast has

cross-moved for summary judgment dismissing Amtrak's claim.  While many of Steadfast's

arguments have merit and can be adjudicated based on the current record, Steadfast's motion

should be denied at this time inasmuch as discovery relating to Steadfast's notice defense was

not completed at the time of the briefing of the motions.  Amtrak's motion similarly should be

denied.

I.      BACKGROUND

      A.      Facts

      On December 11, 2001, Amtrak entered into a contract with STV/HMM, a joint venture

of STV, Inc. ("STV") and Hatch Mott MacDonald, Inc. ("HMM"), to perform construction

management services in relation to the installation of a fire standpipe system in the East River

Tunnel in New York City (the "Standpipe Project").  See Services Contract, dated Dec. 11, 2001

(annexed as Ex. 1 to Steadfast's 56.1 Statement ("Def. 56.1"), filed Apr. 2, 2008 (Docket

# 101)).  On November 7, 2002, Amtrak entered into a contract with Crescent Contracting, Inc.

("Crescent") to perform work on the Standpipe Project.  See Construction Contact, dated Nov. 7,

2002 (annexed as Ex. 2 to Def. 56.1).

On the night of July 9, 2004, a crane operator lost control of a crane while working on a

separate, unrelated project being conducted by Amtrak elsewhere in the East River Tunnel.  See

Safety Incident Report ("Incident Report"), dated July 10, 2004 (annexed as Ex. 5 to Declaration

of Patrick H. Barth in Support of Plaintiff's Motion for Summary Judgment ("Barth Decl."),

filed Feb. 6, 2008 (Docket # 88)); Letter from Paul L. Michalski, Director of Claims/Litigation,

Amtrak, to Kevin J. Duffy, Claim Case Manager, Zurich Am. Ins. Co. (July 15, 2004) (annexed

as Ex. 10 to Barth Decl.).  The crane rolled downhill where it collided with three trucks involved

in work on the Standpipe Project.  See Incident Report.  Six workers were allegedly injured.  Id.

One worker, Edley Gayle, was employed by Amtrak; the remaining workers were employed by

Crescent and by HMM and STV, operating as a STV/HMM, a joint venture.  Id.

        1.     The Insurance Policies

Amtrak is the named insured under two railroad protective policies (the "Policies")

issued by Steadfast.  See Railroad Protective Policy SCO 3609662 ("Bordereau RPP") (annexed

as Ex. 1 to Barth Decl.); Railroad Protective Liability Policy SCO 5393172 ("Crescent RPP")

(annexed as Ex. 3 to Barth Decl.).

The Bordereau RPP was issued effective March 1, 1999, <u>see</u> Bordereau RPP at *34,[1] and was in force in July 2004, <u>see</u> Extension Endorsement (annexed as Ex. 2 to Barth Decl.). STV/HMM was listed as a designated contractor under this policy.  Bordereau RPP at *45.  The Job Description was "Construction mgmt. of tunnel standpipe installation," and the Job Location was "NYC train tunnels."  <u>Id.</u>

The Crescent RPP was issued in November 2002, initially covering the period November 20, 2002 through January 20, 2005.  <u>See</u> Crescent RPP at *80.  Crescent was the Designated Contractor on this policy.  <u>Id.</u>  The Crescent RPP's Declarations define the Location of Covered Operations as "[t]hrough the Amtrak tunnels from North Bergen Portal in NJ east under the Hudson River through Manhattan (Penn Station), under the East River to the Sunnyside Yard Portal in Queens."  <u>Id.</u>  The Description of Operation states: "Contract # C-097-78382 - Installation of interim fire standpipe systems serving East River Tunnels Lines 1-4 (not including Line 4; Zone 4) and North River Tunnels Tracks 2 and 3, New York and New Jersey."  <u>Id.</u>

Both of the Policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and provide that Steadfast "will have the right and duty to defend any 'suit' seeking those damages."  Crescent RPP at *82; Bordereau RPP at *36.  Critically, the policy provides that the insurance "applies to 'bodily injury' or 'property damage' only if . . . [it] arises out of <u>acts or omissions at the 'job location', which are related to or are in connection with the</u> <u>'work' described in the Declarations</u>."  Crescent RPP at *82 (emphasis added); Bordereau RPP

---

[1] Asterisked page numbers refer to the page numbers stamped at the bottom of each page in certain of the exhibits submitted by the parties.

at *36 (same).  It is undisputed that the "work" described consisted of the Standpipe Project,

Bordereau RPP at *55; Crescent RPP at *80 – that is, not the work at the site where the crane

originated.

One of the conditions of coverage under the Policies is that notice of any occurrence,

claim, or suit be given to Steadfast.  In a section labeled "Conditions," both Policies provide

> **2.  Duties In The Event Of Occurrence, Claim Or Suit**
>
> > a.  You must see to it that we are notified as soon as practicable of an
> > occurrence which may result in a claim. . . .
> >
> > b.  If a claim is made or suit is brought against any insured, you must:
> >
> > > (1)  Immediately record the specifics of the claim or suit and the date
> > > received; and
> > >
> > > (2)  Notify us as soon as practicable.
> > >
> > > You must see to it that we receive written notice of the claim or suit as
> > > soon as practicable.
> >
> > c.  You and any other involved insured must:
> >
> > > (1)  Immediately send us copies of any demands, notices, summonses
> > > or legal papers received in connection with the claim or suit;
> > >
> > > (2)  Authorize us to obtain records and other information;
> > >
> > > (3)  Cooperate with us in the investigation settlement or defense of the
> > > claim or suit; and
> > >
> > > (4)  Assist us, upon our request, in this endorsement of any right
> > > against any person or organization which may be liable to the
> > > insured because of injury or damage to which this insurance may
> > > also apply.

Crescent RPP at *87 (internal quotation marks omitted); Bordereau RPP at *40 (same).

2.      Requests for Coverage of Claims

Amtrak had notified Steadfast of the collision by July 13, 2004.  See Email from Kevin J.

Duffy to Robert Fellerath, Zurich Am. Ins. Co. (July 13, 2004) (annexed as Ex. 9 to Barth Decl.).

Also, on July 15, 2004, Amtrak sent a letter to Steadfast informing it that one of the injured

workers had obtained counsel.  See Letter from Paul L. Michalski to Kevin J. Duffy (July 15,

2004) (annexed as Ex. 10 to Barth Decl.).  The letter stated that the collision resulted from "two

(2) independent projects that were on going in close geographic proximity to each other."  Id.

On July 20, 2004, Steadfast acknowledged receipt of Amtrak's notice, and indicated that it was

"proceeding to obtain additional information."  Letter from Kevin J. Duffy to Paul L. Michalski

(July 20, 2004) (annexed as Ex. 12 to Barth Decl.).  On August 9, 2004, Amtrak provided

Steadfast copies of the incident report and related communications between Amtrak and its

contractors.  See Letter from Ronald E. Joseph, Landman Corsi Ballaine & Ford, P.C., to Kevin

J. Duffy (Aug. 9, 2004) (annexed as Ex. 6 to Barth Decl.).

On August 3, 2004, Amtrak was served with the summons and complaint in the personal

injury suit brought by Louis Cevasco, one of the workers injured in the collision.  See Letter

from Paul L. Michalski to Kevin J. Duffy (Aug. 5, 2004) (annexed as Ex. 13 to Barth Decl.); see

also Cevasco v. Nat'l R.R. Passenger Corp., No. 04 Civ. 5760 (PAC) (filed July 23, 2004).  The

original complaint in Cevasco alleged that

> [the] accident was caused solely due to the negligence of the defendant [Amtrak]:
> in failing to inspect, maintain and repair the high rail crane involved in plaintiff's
> accident; in failing to ensure that the high rail crane involved in plaintiff's
> accident was equipped with properly functioning brakes; in failing to ensure that
> the high rail crane involved in plaintiff's accident was free of mechanical defects;
> in failing to chock the wheels of the crane to prevent uncontrolled movement; in
> abandoning the run-away crane without taking necessary action to stop the crane
> before it collided with the high rail vehicle on which plaintiff was situated; in
> failing to warn plaintiff that the crane was out of control and of the impending
> collision; in failing to train its crane operator properly; and, in failing and
> neglecting to enact and enforce safety, maintenance, operating and inspection
> rules, regulations, procedures and practices which would have prevented the
> accident in question.

Complaint, filed July 23, 2004 (04 Civ. 5760, Docket # 1) ("Cevasco Compl."), ¶ 7.  The initial

Cevasco complaint did not contain allegations regarding actions or omissions of Amtrak or any

other party at the Standpipe Project work site.  Rather, as discussed further below, the allegations of negligence, reproduced in the paragraph above, related to Amtrak's responsibility for the crane.  Amtrak sent a copy of the <u>Cevasco</u> summons and complaint to Steadfast.  <u>See</u> Letter from Paul L. Michalski to Kevin J. Duffy (Aug. 5, 2004) (annexed as Ex. 13 to Barth Decl.).  Shortly thereafter, Amtrak notified Steadfast that two more of the injured workers had obtained counsel. <u>See</u> Letter from Ronald E. Joseph to Kevin J. Duffy (Aug. 18, 2004) (annexed as Ex. 16 to Barth Decl.).

On August 26, 2004, Steadfast retained Christopher Hoare "on behalf of the insured under the [Crescent RPP]" and asked that he "proceed to undertake the defense of the insured in accordance with the terms and conditions of the policy."  Letter from Kevin J. Duffy to Christopher Hoare, Esq., Taylor Colicchio & Silverman, LLP (Aug. 26, 2004) (annexed as Ex. 17 to Barth Decl.) ("Hoare Letter").  At the same time, Steadfast advised Hoare that it was "currently reviewing the coverage of this matter as it may be decide[d] that another policy or policies covers the insured for this loss."  <u>Id.</u>  Steadfast sent a copy of the letter retaining Hoare to Amtrak, and requested that Amtrak "cooperate with [Hoare's] office in this litigation and . . . forward to [his] office a copy of all investigation and other pertinent information necessary to the defense of this matter."  <u>Id.</u>  The letter concluded, "I look forward to working with you closely in this matter and know from experience that the interest of our insured/your client will be well represented."  <u>Id.</u>

On October 18, 2004, Amtrak requested clarification on whether coverage would be provided under the Crescent RPP or the Bordereau RPP.  <u>See</u> Letter from Paul L. Michalski to Kevin J. Duffy (Oct. 18, 2004) (annexed as Ex. 20 to Barth Decl.).

On April 26, 2005, Steadfast denied coverage, informing Amtrak that the Crescent RPP

"does not provide coverage for the Cevasco lawsuit, and it will not provide coverage for any

other claims that may be made against Amtrak as a result of the July 10, 2004 collision."  Letter

from Kevin J. Duffy to Paul L. Michalski (Apr. 26, 2005) (annexed as Ex. 21 to Barth Decl.)

("April 2005 Letter"), at *732.  Steadfast wrote:

> It is Steadfast's position that any 'bodily injury' sustained by the plaintiff or the
> other individuals injured in this incident did not arise out of acts or omissions at
> the 'job location,' which are related or in connection with Crescent's 'work.'  The
> 'bodily injury' sustained by Amtrak's employee and by the Crescent/STV
> employees arises out of Amtrak's acts or omissions at Substation #44 with respect
> to its ownership, maintenance, operation and use of the subject crane. . . .
> Amtrak's alleged acts or omissions with respect to . . . the crane did not occur at
> the 'job location' insured under the [Crescent RPP], but rather, occurred nearly
> one mile away.  Moreover, it appears that Amtrak's alleged acts or omissions with
> respect to the crane were not related to, or in connection with, the 'work' insured
> under the [Crescent RPP] – Crescent's installation of the fire standpipe systems in
> East River Tunnel 1.

Id. at *731.  In its letter, Steadfast reserved the right to "modify its position regarding coverage

upon receipt of additional or different information regarding this matter."  Id. at *732.

On May 13, 2005, Steadfast informed Amtrak that the Bordereau RPP would likewise not

cover the claims arising out of the July 10, 2004 collision.  See Letter from Joe Gidursky, Claim

Case Manager, Steadfast Ins. Co., to Paul L. Michalski (May 13, 2005) (annexed as Ex. 23 to

Barth Decl.) ("May 2005 Letter"), at *733.  Steadfast indicated that "it does not appear that

Crescent's 'work' at East River Tunnel 1 was reported in any of the monthly bordereau on file

with Steadfast," and that the Bordereau RPP "does not provide coverage for acts or omissions at

an unreported 'job location', which is related to or in connection with 'work' that has not been

reported to Steadfast."  Id. at *736.  However, "even if Crescent's 'work' at this 'job location'

had been reported in a monthly bordereau on file with Steadfast, the [Bordereau RPP] would not

provide coverage" because "[t]he acts or omissions giving rise to the claimants' injuries did not

occur at the 'job location' where Crescent was performing its 'work' . . . [and] it appears that

Amtrak's alleged acts or omissions with respect to the Terex crane were not related to, or in

connection with, Crescent's 'work' involving the installation of the fire standpipe systems in

East River Tunnel 1." Id. at *736-37.

      On August 23, 2005, the second of the injured workers, Jugal Sood, filed suit against

Amtrak.  See Sood v. Nat'l R.R. Passenger Corp., 05 Civ. 7419 (PAC) (filed Aug. 23, 2005).

The Sood complaint made substantially the same allegations against Amtrak as had the Cevasco

complaint.  Complaint, filed Aug. 23, 2005 (05 Civ. 7419, Docket # 1) ("Sood Compl."), ¶ 7.

However, unlike the Cevasco case, the Sood case named Crescent as a defendant.  While the

complaint alleged Crescent committed negligent acts, it did not describe the manner in which

Crescent was negligent.  See id. ¶¶ 66-78.  Amtrak did not provide Steadfast with a copy of the

Sood complaint or otherwise inform Steadfast that the suit had been filed.

      On January 25, 2006, Amtrak sent letters to Steadfast asking it to reconsider its denial of

coverage under both the Crescent and Bordereau RPPs.  See Letter from Patrick H. Barth, Law

Offices of Patrick H. Barth, to Joe Gidursky (Jan. 25, 2006) (annexed as Ex. 24 to Barth Decl.)

("Bordereau RPP Reconsideration Request"); Letter from Patrick H. Barth to Kevin J. Duffy

(Jan. 25, 2006) (annexed as Ex. 25 to Barth Decl.) ("Crescent RPP Reconsideration Request").

These letter made no motion of the Sood complaint or of the fact that Sood named Crescent as a

defendant. Rather, the letters disputed Steadfast's interpretation of the Policies, see Bordereau

RPP Reconsideration Request at *756-57; Crescent RPP Reconsideration Request at *51A-52;

stated that an act or omission related to worker safety at the Standpipe Project could not be

"rule[d] out"; and suggested that the workers responsible for safety at the Standpipe Project

could have been "inattentive[]," <u>see</u> Bordereau RPP Reconsideration Request at *757-58;

Crescent RPP Reconsideration Request at *52.

     Steadfast responded by requesting documents from Amtrak, including documents to

"support [the] position that the inattentiveness of Amtrak's 'designated employee' (Gayle)

and/or Crescent's driver (Adornetti) may have been a contributing cause of the accident."  <u>See</u>

Letter from Christopher Lucci, Claim Case Manager, Steadfast Ins. Co., to Patrick H. Barth

(Mar. 14, 2006) (annexed as Ex. 26 to Barth Decl.).  After receiving the requested documents

from Amtrak, Steadfast once again denied coverage under the Policies.  <u>See</u> Letter from

Christopher Lucci to Patrick H. Barth (May 31, 2006) (annexed as Ex. 30 to Barth Decl.) ("Final

Disclaimer").  Steadfast noted that "some of [the standpipe crew] heard the 'warning beeps' of

the crane, but did not realize that the crane was approaching until moments before the collision";

that "none of the crew members were aware of the crane's approach until moments before it

entered the tunnel"; and that "none [of the crew] had time to warn others about the runaway

crane." <u>Id.</u> at *835.  It further noted that "Amtrak's own investigation concluded that the cause

of this accident was the malfunction of the crane, rather than any alleged failure on the part of

the standpipe crew to maintain a proper lookout."  <u>Id.</u> at *838.  Steadfast continued:

> Coverage cannot be predicated upon a theoretical possibility that Pilot Gayle
> <u>might</u> have been, or <u>could</u> have been negligent in connection with this incident –
> where no allegations of this nature were made in the <u>Cevasco</u> complaint,
> Amtrak's own investigation did not give rise to this possibility, and none of the
> eyewitnesses even suggested that this had occurred.

<u>Id.</u>  Steadfast further requested that Amtrak advise it if Amtrak believed it had "misunderstood

any of the facts or circumstances giving rise to this claim" or was "in possession of any other

information that . . . might affect Steadfast's coverage determination."  Id.

On August 8, 2006, the Cevasco complaint was amended to include allegations of negligence at the Standpipe Project work site.  See Second Amended Complaint, filed Aug. 8, 2006 (04 Civ. 5760, Docket # 111) ("Cevasco Am. Compl.").[2]

B.      The Filing of the Instant Lawsuit

The next day, on August 9, 2006, Amtrak filed the instant suit against Steadfast.  See Complaint, filed Aug. 9, 2006 (Docket # 1).  Although the complaint sought a declaration that Steadfast must defend and indemnify Amtrak against "any and all claims arising out of the incident of July 10, 2004," the only underlying lawsuit referred to in the complaint was Cevasco. Id.  At the time it filed the complaint, Amtrak also filed with the Court a Related Case Statement, indicating that the complaint was related to Cevasco, and that Cevasco had been consolidated with Sood.  See Related Case Statement, filed Aug. 9, 2006 (Docket # 3) ("Related Case Stmt.").  Steadfast submitted its answer on October 3, 2006.  See Answer, filed Oct. 3, 2006 (Docket # 10).

On August 15, 2006, two more injured workers filed suit alleging negligence against Amtrak, STV, HMM, and STV/HMM.  See Adornetti v. Nat'l R.R. Passenger Corp., 06 Civ. 6195 (PAC) (filed Aug. 15, 2006); Vitale v. Nat'l R.R. Passenger Corp., 06 Civ. 6196 (PAC) (filed Aug. 15, 2006).  On September 11, 2006, the fifth injured worker filed suit against Amtrak, Crescent, STV, HMM, and STV/HMM, alleging negligence and failure to provide a safe work site.  See Gayle v. Nat'l R.R. Passenger Corp., 06 Civ. 6956 (PAC) (filed Sept. 11,

---

[2] The previously-filed First Amended Complaint in Cevasco had added defendants not present at the Standpipe Project and had made no new allegations of negligence against Amtrak. See Amended Complaint, filed May 9, 2005 (04 Civ. 5760, Docket # 25).

2006).  On January 29, 2007, the <u>Sood</u> complaint was amended to allege negligence at the

Standpipe Project.  <u>See</u> Amended Complaint, filed Jan, 29, 2007 (05 Civ. 7419, Docket # 72).

Amtrak did not inform Steadfast of these lawsuits at the time of the filing or service.

On February 13, 2007, Amtrak filed its Second Amended Complaint in the instant case,

which for the first time identified all five underlying lawsuits.  <u>See</u> Second Amended Complaint,

filed Feb. 13, 2007 (Docket # 19).  In its answer to the amended complaint, Steadfast asserted the

defense that Amtrak "failed to meet the notice requirements under the . . . Policy for an

occurrence, claim or suit, which is a condition precedent for coverage."  Answer to Second

Amended Complaint, filed Mar. 23, 2007 (Docket # 28).

C.    The Instant Motions

On February 6, 2008, Amtrak filed the instant motion for summary judgment against

Steadfast and Steadfast filed a cross motion for summary judgment.[3]  The main issues raised by

---

[3] <u>See</u> Notice of Motion, filed Feb. 6, 2008 (Docket # 85); Declaration of Paul L.
Michalski in Support of Plaintiff's Motion for Summary Judgment, filed Feb. 6, 2008 (Docket
# 86); Rule 56.1 Statement, filed Feb. 6, 2008 (Docket # 87) ("Pl. 56.1"); Barth Decl.;
Memorandum of Law of the Plaintiff National Railroad Passenger Corp. in Support of Motion
for Summary Judgment Against the Defendant Steadfast Insurance Company, filed Apr. 30,
2008 (Docket # 108) ("Pl. Mem."); Memorandum of Law in Partial Opposition to Plaintiff's
Motion for Summary Judgment Against Steadfast Insurance Company, filed Apr. 2, 2008
(Docket # 93) ("Great Am. Mem."); Declaration of Joanna M. Roberto in Partial Opposition to
Plaintiff's Motion for Summary Judgment Against Steadfast Insurance Company, filed Apr. 2,
2008 (Docket # 94); RSUI Indemnity Company's Memorandum of Law in Partial Opposition to
Plaintiff's Motion for Summary Judgment Against Steadfast Insurance Company, filed Apr. 2,
2008 (Docket # 95) ("RSUI Mem."); Declaration of Eric D. Suben in Partial Opposition to
Plaintiff's Motion for Summary Judgment Against Steadfast Insurance Company, filed Apr. 2,
2008 (Docket # 96); Steadfast's Notice of Cross Motion for Summary Judgment Against
National Railroad Passenger Corp., filed Apr. 2, 2008 (Docket # 98); Rule 56.1 Counter-
Statement by Steadfast, filed Apr. 2, 2008 (Docket # 97); Affidavit of Kevin Duffy in Support of
Steadfast's Summary Judgment Motion Against Amtrak, filed Apr. 2, 2008 (Docket # 99);
Affidavit of Christopher Hoare in Support of Steadfast's Summary Judgment Motion Against
Amtrak, filed Apr. 2, 2008 (Docket # 100) ("Hoare Aff."); Def. 56.1; Steadfast Insurance

the parties relate to the scope of coverage and whether notice was provided to Steadfast in accordance with the terms of the Policies.

While no relief has been sought against them in this motion, defendants RSUI Indemnity Co. and Great American E&S Insurance Co. filed papers opposing Amtrak's motion for summary judgment on the basis that the injuries do not come within the coverage provision of the Policies.  See RSUI Mem. at 3-7; Great Am. Mem. at 9-14.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Law Governing Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

---

Company's Memorandum of Law in Opposition to Amtrak's Motion and in Support of its Cross Motion for Summary Judgment, filed Apr. 2, 2008 (Docket # 102) ("Def. Mem."); Defendant Arch Specialty Insurance Company's Rule 56.1 Counter-Statement in Partial Opposition to Plaintiff's Motion for Summary Judgment, filed Apr. 3, 2008 (Docket # 104); Amtrak's Memorandum of Law in Reply to Steadfast's Opposition to Amtrak's Motion for Summary Judgment and in Opposition to Steadfast's Cross Motion for Summary Judgment, filed Apr. 30, 2008 (Docket ## 113, 114) ("Pl. Reply Mem."); Barth Reply Declaration in Support of Plaintiff's Motion for Summary Judgment, filed Apr. 30, 2008 (Docket # 107); Declaration of Patrick H. Barth in Opposition to Steadfast's Cross Motion for Summary Judgment, filed Apr. 30, 2008 (Docket # 110) ("Barth Decl. in Opp'n"); Plaintiff's Counter Statement to Steadfast's Rule 56.1 Statement and Plaintiff's 56.1 Statement in Opposition, filed Apr. 30, 2008 (Docket # 109); Declaration of Donald J. Nugent, filed Apr. 30, 2008 (Docket # 111); Declaration of Ronald E. Joseph, Esq., filed Apr. 30, 2008 (Docket # 112); Steadfast Insurance Company's Memorandum of Law in Reply to Amtrak's Opposition to Cross Motion for Summary Judgment, filed May 27, 2008 (Docket # 116) ("Def. Reply Mem.").

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); accord Argus, Inc. v. Eastman Kodak Co., 801 F.2d 38, 42 (2d Cir. 1986), cert. denied, 479 U.S. 1088 (1987).  In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.

B.     Law Governing Interpretation of Contracts and Insurance Policies

 The parties agree that the law of New York applies to this case.  Under New York law, "[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."  Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002); see also White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267 (2007) ("As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.") (citations omitted).  However, "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment."  LaSalle Bank Nat'l Ass'n v. Nomura

13

Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) (citation and internal quotation marks omitted).  Whether a contractual provision is ambiguous is a "threshold question of law to be determined by the court."  Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (citing cases).  If a court determines that a contractual provision is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract."  Id. at 43 (citation and internal quotation marks omitted).

New York courts interpret insurance contracts "to give effect to the intent of the parties as expressed in the clear language of the contract."  Goldberger v. Paul Revere Life Ins. Co., 165 F.3d 180, 182 (2d Cir. 1999) (quoting Village of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995)).  Generally, the terms of insurance policies are read "in light of common speech and the reasonable expectations of a businessperson."  Parks Real Estate, 472 F.3d at 42 (citing Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 13 A.D.3d 599, 600 (2d Dep't 2004); Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 68-69 (1st Dep't 1998)).  "If the provisions are clear and unambiguous, courts are to enforce them as written. However, if the policy language is ambiguous . . . the ambiguity must be interpreted in favor of the insured."  Goldberger, 165 F.3d at 182 (citation and internal quotation marks omitted).

III.   DISCUSSION

A.   Scope of the Policies' Coverage

Amtrak argues that "coverage is established because the bodily injuries were sustained at the job location by covered workers engaged in the covered operations."  Pl. Mem. at 5. Essentially, Amtrak argues that it has a right to indemnification under the policies merely based

on the fact that the injuries took place at the job location that was the subject of the Policies.

The coverage provision of the Policies is not so broad, however. The Policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' only if . . . [it] arises out of acts or omissions at the 'job location', which are related to or are in connection with the 'work' described in the Declarations."  Crescent RPP at *82; Bordereau RPP at *36.  This provision thus requires that there be some "act or omission" occurring "at" the job location, and "related to" the covered work, that gives rise to the claims against the insured.  The language of this provision is distinguishable from the language involved in the cases cited by Amtrak, in which the insurance policies required only that the injuries arise out of the covered work.  See Pl. Mem. at 6-8 (citing Turner Const. Co. v. Am. Mfrs. Mut. Ins. Co., 485 F. Supp. 2d 480, 484, 487 (S.D.N.Y. 2007) (the phrase "arising out of your work" does not require that the work be the proximate cause of injury); Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., 475 F. Supp. 2d 400, 404, 411-12 (S.D.N.Y. 2007) ("liability arising out of your ongoing operations" includes damages that occur when no one is actively working); O'Connor v. Serge Elevator Co., 58 N.Y.2d 655, 657-58 (1982) (liability "arising out of the work" includes injuries that occur when entering or leaving the workplace); Chelsea Assocs. LLC v. Laquila-Pinnacle, 21 A.D.3d 739, 740-41 (1st Dep't) (injuries that occur while entering the workplace "must be deemed as a matter of law to have arisen out of the work") (quoting O'Connor, 58 N.Y.2d at 657-58), lv. denied, 6 N.Y.3d 742 (2005)); see also Cevasco v. Nat'l R.R. Passenger Corp., 2009 WL 440511,  at *7-10 (S.D.N.Y. Feb. 23, 2009) (discussing case law interpreting "arising out of" clauses).  None of the cases cited by Amtrak analyze policy language requiring "acts or omissions" occurring "at" the job

location.

The actual language in the Policies admits of no ambiguity, however.  Under the terms of the coverage provision, coverage is not triggered merely by the occurrence of an injury at the job location.  Rather, there must be an "act or omission" at the job location that is related to the covered work.  Thus, the mere fact that an injury occurred at the Standpipe Project is insufficient for coverage.

The parties have not cited to New York case law interpreting an insurance contract that conditions coverage on a requirement that liability arise from "acts or omissions" occurring "at" the job location.  Courts in other jurisdictions, however, have interpreted similar language in accordance with its plain meaning to require more than mere presence on the work site.  For example, in St. Paul Fire & Marine Insurance Co. v. CSX Transportation, Inc., 502 F. Supp. 2d 792 (C.D. Ill. 2007), a subcontractor's employee was killed when the backhoe he was driving collided with a train at a railroad crossing.  See 502 F. Supp. 2d at 794-95.  The railroad's insurance policy covered "bodily injury" only if it "ar[ose] out of acts or omissions at the 'job location' which are related to or are in connection with the 'work' described in the Declarations."  Id. at 796.  The Court concluded that the policy did not cover the death of the backhoe driver because, although he was injured on the covered work site, he was there only to pick up construction materials for use in work being performed on another job location, and thus his "'bodily injury' did not 'arise out of acts or omissions at the job location which are related to or are in connection with the [covered] work."  Id. at 801 (internal bracketing and some quotation marks omitted).  In Southern Railway Co. v. Fidelity & Casualty Co. of New York, 455 F. Supp. 9 (D.S.C. 1977), vandals drove a bulldozer from a highway construction site onto

16

the adjacent railroad tracks, causing a collision and derailment.  See 455 F. Supp. at 10.  The construction contractor had an agreement with the railroad for construction and use of a temporary crossing, and obtained insurance to cover losses "arising out of acts or omissions at the designated job site which are related to or are in connection with the work," which was described as "Temporary Road or Driveway-'Crossing.'"  Id.  The Court concluded that there was no coverage under this policy because there had been no showing of any "act or omission" that related to the use of the railroad crossing, where the only possible "omission" was "the failure to protect the bulldozer from theft" and the only possible "act" was "the act of the vandals in driving the bulldozer up on the tracks."  Id. at 11-12.

Here, damages arising out of the loss of control of the crane in use on an unrelated project at a different work site are not covered by the Crescent RPP or Bordereau RPP unless Amtrak can show that acts or omissions occurring at the Standpipe Project also gave rise to the collision.  Contrary to Amtrak's argument, the requirement that there be some "act or omission" at the job location does not permit coverage merely because "injuries were sustained at the job location."  Pl. Mem. at 5.  Accordingly, Amtrak is not entitled to a ruling that it has a right to indemnification under the Policies merely based on the facts that injuries took place at the job location by workers performing work described in the Policies.[4]

----

[4] Amtrak characterizes Steadfast's arguments on this point, see Def. Mem. at 4-5, 18-19; Pl. Reply Mem. at 11, as an effort to invoke Exclusion 2(d) of the Policies, which excludes coverage for "bodily injury . . . the sole proximate cause of which is an act or omission of any insured other than acts or omissions of any of [the] designated employees," Crescent RPP at *83 (internal quotation marks omitted); Bordereau RPP at *36 (same).  This is a mischaracterization of Steadfast's arguments.  Steadfast does not argue that the coverage is excluded, but that the claims do not fall within the scope of paragraph 1.b.2 of the Policies' definition of "Coverage." See Crescent RPP at *82; Bordereau RPP at *36.

B.      Duty to Defend

        1.      Governing Law

An insurer's duty to defend is broader than its duty to indemnify, and has been described

by the New York Court of Appeals as "exceedingly broad."  Century 21, Inc. v. Diamond State

Ins. Co., 442 F.3d 79, 82 (2d Cir. 2006) (citing Colon v. Aetna Life & Cas. Ins. Co., 66 N.Y.2d

6, 8 (1985)).  "[S]o long as the claims asserted against the insured may rationally be said to fall

within policy coverage, whatever may later prove to be the limits of the insurer's responsibility

to pay, there is no doubt that it is obligated to defend."  Hugo Boss Fashions, Inc. v. Federal Ins.

Co., 252 F.3d 608, 620 (2d Cir. 2001) (quoting Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304,

310-11(1984)) (internal bracketing omitted) (emphasis in original).  Thus, there is a "separate,

contractual duty to defend . . . until it is determined with certainty that the policy does not

provide coverage."  Id. (emphasis in original).

        The duty to defend arises when "the allegations within the four corners of the underlying

complaint potentially give rise to a covered claim, or where the insurer has actual knowledge of

facts establishing a reasonable possibility of coverage."  Frontier Insulation Contractors, Inc. v.

Merchants Mut. Ins. Co., 91 N.Y.2d 169, 175 (1997) (quoting Fitzpatrick v. Am. Honda Motor

Co., 78 N.Y.2d 61, 65-67 (1991)) (internal quotation marks omitted).  Thus, "[i]f a complaint

contains any facts or allegations which bring the claim even potentially within the protection

purchased, the insurer is obligated to defend."  BP Air Conditioning Corp. v. One Beacon Ins.

Group, 8 N.Y.3d 708, 714 (2007) (citation and internal bracketing omitted).  "If, liberally

construed, the claim is within the embrace of the policy, the insurer must come forward to

defend its insured no matter how groundless, false or baseless the suit may be."  Century 21, 442

18

F.3d at 83 (quoting Colon, 66 N.Y.2d at 8-9).  However, "a court should not attempt to impose

the duty to defend on an insurer through a strained, implausible reading of the complaint that is

linguistically conceivable but tortured and unreasonable."  Northville Indust. Corp. v. Nat'l

Union Fire Ins. Co. of Pittsburgh, 89 N.Y.2d 621, 634-35 (1997) (citation and internal quotation

marks omitted).

"Furthermore, where the policy includes an obligation to defend, if there is a doubt as to

whether the claim comes within the insurer's duty to indemnify, the insurer is generally required

to furnish a defense, leaving the issue of indemnification to be settled after establishment of the

insured's liability."  Village of Sylvan Beach, 55 F.3d at 115 (citation omitted).  Thus, the duty

to defend would "endure[] unless and until there is a point in the [underlying] proceeding at

which the factual nature of [the] allegation[s] . . . is clarified 'with certainty' to exclude any issue

relating to [covered] conduct."  Century 21, 442 F.3d at 84 (citation omitted).

      2.    Analysis

The current pleadings in each of the five underlying personal injury cases assert that the

injuries arose from acts or omissions at the Standpipe Project work site.  Thus, there can be no

dispute they come within the coverage provisions of the insurance policy.

What is in dispute is whether Amtrak complied with the requirements of the insurance

policy that Amtrak "[n]otify [Steadfast] as soon as practicable" in the event that "a claim is made

or 'suit' is brought against any insured."  Crescent RPP at *87; Bordereau RPP at *40.  Before

we deal with the notice defense, however, we must address Amtrak's argument that the one

complaint that was transmitted to Steadfast – the original Cevasco complaint – contained a claim

covered by the policy.  Because the original Cevasco complaint was timely provided to

Steadfast, the question becomes whether that complaint triggered Steadfast's duty to defend under the Policies.

There is no express reference in the original <u>Cevasco</u> complaint to any act or omission at the Standpipe Project work site. Instead, the complaint focuses on the maintenance of the crane, the crane's operation, and the training of the crane operator. <u>See</u> <u>Cevasco</u> Compl. ¶ 7.

Two clauses of one paragraph of the complaint, however, contain language that Amtrak has suggested should be viewed as making allegations relating to events at the Standpipe Project. Pl. Mem. at 14-15. In one clause, the complaint alleges that Amtrak was negligent "in failing to warn plaintiff that the crane was out of control and of the impending collision"; in another, it alleges that Amtrak was negligent "in failing and neglecting to enact and enforce safety, maintenance, operating and inspection rules, regulations, procedures, and practices which would have prevented the accident in question." <u>Cevasco</u> Compl. ¶ 7.

The second clause does not specify what sort of rules or other standards would have prevented the accident. Neither of the two clauses specifies any location at which these alleged acts of negligence occurred. While the Court is mindful of the obligation to determine whether these claims "even potentially" allege acts or omissions at the Standpipe Project work site, it would result in a "strained, implausible reading of the complaint," <u>see</u> <u>Northville Indust. Corp.</u>, 89 N.Y.2d at 635, to interpret these clauses as asserting that there was some act or omission by Amtrak (the only defendant at that time) that occurred "at" the Standpipe Project site. Certainly, nothing in the clauses says as much. Looking at their context, the other allegations in the paragraph and surrounding paragraphs expressly relate to the site from which the crane originated, the maintenance and operation of the crane, or the training of the crane's operator. In

addition, neither of the Standpipe Project contractors were named as defendants.  In brief,

nothing in the complaints suggests any claim regarding acts or omissions at the Standpipe

Project site.  Accordingly, the original <u>Cevasco</u> complaint cannot plausibly be read to trigger

Steadfast's duty to defend.

      Amtrak's repeated citation to <u>BP Air Conditioning Corp. v. One Beacon Insurance</u>

<u>Group</u>, 8 N.Y.3d 708 (2007), <u>see</u> Pl. Mem. at 8-9; Pl. Reply Mem. at 9, 12, does not change this

result.  <u>BP Air Conditioning Corp.</u> dealt with a policy that covered injuries "arising out of [the]

ongoing operations" of a subcontractor.  8 N.Y.3d at 712.  The personal injury complaint in that

case specifically alleged that the cause of the injury arose out of those operations.  <u>Id.</u> at 715.

Thus, <u>BP Air Conditioning Corp.</u> is simply irrelevant to the instant case.

      There is no question that Amtrak's arguments to Steadfast at the time it sought coverage

were prescient: that is, Amtrak attributed to the <u>Cevasco</u> complaint claims that were not

contained in the complaint itself but that were ultimately made in a later pleading.  The issue we

are called upon to determine here, however, is what claims were actually "contained in the

underlying complaint," <u>id.</u> at 714, since it is these claims that trigger the duty to defend, <u>see</u> <u>id.</u>

(court must determine whether "[the] complaint contains any facts or allegations which bring the

claim even potentially within the protection purchased") (citation and internal quotation marks

omitted).  Amtrak's argument boils down to the proposition that "no one can rule out a

workplace safety claim in any personal injury claim presented by a worker."  Pl. Mem. at 7.  No

authority is cited for this proposition.  We reject its application in this case on the ground that

such a broad rule invites the Court to create a duty to defend without regard to the actual

allegations in the underlying pleading.

C.      Steadfast's Notice Defense

As previously discussed, the Policies here each contained a requirement not only that notice of a claim be given but also that notice be given of any lawsuit "as soon as practicable." Crescent RPP at *87; Bordereau RPP at *40.  The Court of Appeals has articulated the significance of such language as follows:

> For years the rule in New York has been that where a contract of primary insurance requires notice "as soon as practicable" after an occurrence, the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract (see Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440-443 [1972]) [failure to notify in a timely manner allowed insurer to disclaim coverage]).  No showing of prejudice is required (id.). Strict compliance with the contract protects the carrier against fraud or collusion (id.); gives the carrier an opportunity to investigate claims while evidence is fresh; allows the carrier to make an early estimate of potential exposure and establish adequate reserves and gives the carrier an opportunity to exercise early control of claims, which aids settlement (Unigard Sec. Ins. Co. v. North Riv. Ins. Co., 79 N.Y.2d 576, 582 [1992]).

Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 339 (2005).

It is undisputed that all five plaintiffs ultimately filed pleadings naming at least one of the Standpipe Project contractors as defendants and/or asserting claims of negligence at that work site.  See Def. Reply Mem. App. A.  Sood did so on August 23, 2005; Cevasco did so by means of an amended complaint on August 8, 2006; and the remaining three plaintiffs did so in August and September 2006.  See Sood Compl. ¶ 76; Cevasco Am. Compl. ¶¶ 193-203; Adornetti Complaint, filed Aug. 15, 2006 (06 Civ. 6195, Docket # 1), ¶¶ 253-288; Vitale Complaint, filed Aug. 15, 2006 (06 Civ. 6196, Docket # 1), ¶¶ 253-288; Gayle Complaint, filed Sept. 11, 2006 (06 Civ. 6056, Docket # 1), ¶¶ 23, 87-110.  It is also undisputed that Amtrak did not itself provide notice of these lawsuits until it filed its Second Amended Complaint in the instant action on February 13, 2007.  Given that case law has found delays of as short as 51 days to relieve an

22

insurer of responsibility for coverage where a policy requires notice of a lawsuit "as soon as practicable," see, e.g., Morris Park Contracting Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 33 A.D.3d 763, 771 (2d Dep't 2006) (a delay of just over two months is a breach of the insurance policy's "as soon as practicable" requirement) (citing cases involving delays of 51, 53, and 57 days, and from one to three months), Amtrak has made no argument that the Second Amended Complaint, if it constituted the only notice to Steadfast of the lawsuits, would be timely.

Instead, Amtrak has offered a number of arguments that it asserts relieved it of the Policies' requirement to provide notice or that otherwise show it complied with the Policies. Some of these arguments can be rejected based on the current record.

First, we reject Amtrak's assertion that it was relieved of any notice obligation because Steadfast had "repudiated" the insurance policies in its letters in April and May 2005. Pl. Mem. at 10-13, 16-17.[5] As an initial matter, Steadfast's letter denying coverage is better characterized as a "disclaimer" of coverage rather than as a "repudiation." As was noted in Seward Park Housing Corp. v. Greater New York Mutual Insurance Co., 43 A.D.3d 23 (1st Dep't 2007), courts have erroneously used the terms "disclaimer of coverage" and "repudiation of liability" synonymously. 43 A.D.3d at 30-31. Where an insurer "shape[s] its conduct in accordance with the provisions of the contract" and "explain[s] the denial of coverage with reference to policy provisions and exclusions," this is a "disclaimer" of coverage, not a "repudiation" of the contract of insurance. Id. at 32.

_____

[5] Notably, even if Amtrak could prevail on this point, it would presumably only excuse a failure to provide notice as to the later Cevasco complaint, not any of the other four lawsuits.

In any event, Amtrak invokes the rule that once an insurer denies coverage for a particular claim, it cannot base its defense on the insured's subsequent failures to comply with conditions precedent to coverage – including notice – but must instead "stand or fall upon the defense upon which it based its refusal to pay." State Farm Ins. Co. v. Domotor, 266 A.D.2d 219, 220-21 (2d Dep't 1999) (citation and internal quotation marks omitted); see also Varda, Inc. v. Ins. Co. of N. Am., 45 F.3d 634, 637 (2d Cir. 1995) (if the insured had rejected the claim before requesting proofs of loss, it could not now rely on failure to provide proofs of loss as its basis for disclaiming liability for the same claim).  That doctrine does not apply here, however, because Steadfast did not "distinctly, unequivocally, and absolutely refuse[] to perform its obligations under the policy." Varda, 45 F.3d at 638.  Rather, it pointed out that the original Cevasco claim did not come within the coverage provisions of the Policies for the specific reason that there was no claim of negligence at the job location.  See April 2005 Letter; May 2005 Letter; Final Disclaimer.  The denial of coverage was thus not "unequivocal" or "absolute" but was based on the particular set of factual circumstances contained in the Cevasco complaint.  Once the reasons underlying that refusal were no longer applicable because of the new claims in the Second Amended Complaint, there is no reason to estop Steadfast from requiring adherence to the notice provision of the Policies.  Amtrak has pointed to no case law suggesting that a specific denial of coverage of the kind that Steadfast gave here – one that focused on the allegations of the complaint and the party named in the complaint – prevents an insurer from requiring notice when a new claim arises, based on new allegations and new defendants, that is outside the scope of the insurer's prior denial.  The case Amtrak relies on most heavily, City of New York v. Continental Casualty Co., 27 A.D.3d 28 (1st Dep't 2005), involved an insurance

24

contract that required prompt notice only of the incident, not of a lawsuit, and has no relevance here.

Amtrak asserts that it should not have had to "go through the motions of sending pleadings after a disclaimer as advanced by Steadfast," asserting that "Sood and the other suits were all based on the same set of factual circumstances." Pl. Reply Mem. at 14. It is unclear what Amtrak means by the phrase "factual circumstances." Whether all suits were based on the same incident is irrelevant to the coverage provisions of the Policies. What is relevant is, as noted above, what claims were made in the original Cevasco complaint. Those claims changed completely in the later pleadings when there were allegations added regarding negligence at the Standpipe site. The denial of coverage by Steadfast was limited to a specific set of circumstances and Steadfast properly viewed those circumstances as falling outside the scope of the Policies' coverage. We see no warrant in the case law to charge Steadfast with waiving the Policies' notice requirements where new circumstances arose that were plainly outside the scope of the denial letter. Cf. H.S. Equities, Inc. v. Hartford Acc. & Indem. Co., 661 F.2d 264, 271 n.6 (2d Cir. 1981) (insurer's "general denial of liability for particular claims, coupled with justification for its position, was the legal equivalent of a denial of liability for a particular suit within the scope of the general denial") (emphasis added). Notably, Steadfast's first denial letter raised the possibility that it might modify its position if it received "additional or different information" regarding the accident. See April 2005 Letter at *732; May 2005 Letter at *737. Similarly, Steadfast's denial on reconsideration invited Amtrak to provide it with any additional information that could affect Steadfast's coverage determination that had not already been

provided.  See Final Disclaimer at *838.[6]

   We next reject Amtrak's assertion that its letter requesting reconsideration of the disclaimer of coverage gave notice that Cevasco was asserting claims of acts or omissions "at" the work site.  In its request for reconsideration of the denial of coverage, Amtrak indicated that its Accident/Injury Investigation Report showed that "[s]everal Crescent employees observed the lights on the crane on the top of the hill; others heard the beeping from the crane that was traveling backward [and] retreated to safe locations."  See Bordereau RPP Reconsideration Request at *757; Crescent RPP Reconsideration Request at *52.  But these assertions do not show that there were claims in the Cevasco complaint regarding negligence at the Standpipe Project site.

   Additionally, we reject Amtrak's argument that Steadfast waived a notice defense by failing to plead it in its answer to Amtrak's original complaint in the instant case, see Pl. Mem. at 19, which sought defense and indemnification against "any and all claims arising out of the incident of July 10, 2004" but only expressly referred to the Cevasco suit.  See Compl.  First, Amtrak has pointed to no rule stating that a notice defense is waived if not asserted in an original pleading.  Indeed, Fed. R. Civ. P. 12(h)(1)(B)(ii) provides that specific defenses are waived if not included in a first responsive pleading, and a notice defense by an insurer is not one of them.  Moreover, Steadfast could not have asserted a notice defense relating to the Adornetti, Vitale,

_____

   [6] In light of the specific allowance of the possibility that its coverage decision could change with the presentation of new facts regarding the incident, we do not view Steadfast's statement that it "will not provide coverage for any other claims that may be made against Amtrak as a result of the July 10, 2004 collision," April 2005 Letter at *732, to estop it from enforcing the Policies' notice requirements for lawsuits alleging new facts, asserting new theories of liability, and naming new defendants.

and Gayle suits, as they had not yet been filed.  And there was no reason to assert such a defense with respect to Sood since it was not even mentioned in the original complaint.[7]

We also reject Amtrak's related claim that its initial pleadings in this action constituted notice to Steadfast of the various lawsuits.  The original complaint and the amended complaint in the instant case referred only to Cevasco and the dispute regarding coverage based on the original Cevasco complaint.  There is no mention of any later complaint or of any other lawsuit. That the cases were consolidated for pretrial purposes is of no moment when the complaint itself specifically mentions only the Cevasco suit.

Amtrak argues that Steadfast in fact might have had knowledge of the lawsuits through various means, such as through a claims manager, see Pl. Reply Mem. at 4-5, and it seeks denial of Steadfast's motion on the ground that it has not had the opportunity for adequate discovery on this point, id. at 5.  While Steadfast cites case law for the proposition that notice normally must come from the named insured, see Def. Reply Mem. at 9-10, it does not even mention, let alone distinguish, cases cited by Amtrak suggesting that notice from another source may sometimes suffice, see Pl. Reply Mem. at 16 (citing Rose v. State, 265 A.D.2d 473 (2d Dep't 1999); N.Y. Tel. Co. v. Travelers Cas. & Sur. Co., 280 A.D.2d 268 (1st Dep't 2001)).  Also, Steadfast does not address the question of whether the unusual circumstances of the instant case – including its purported retention of an attorney on behalf of Amtrak, a disclaimer of coverage with an invitation to provide more information, and the filing of a suit (Sood) that arguably came

---

[7] Amtrak points to the fact that a related case statement filed in the instant case reflected that the Cevasco had been consolidated with Sood.  See Related Case Stmt.  But this single reference to the existence of another case in a document separate from the complaint hardly put Steadfast on notice that it was required to plead a defense to a coverage claim that was not actually included in the complaint.

within the policy during the period of reconsideration – might excuse compliance with the Policy

if it could be shown that Steadfast received prompt notice of the covered suit.  The facts

regarding Steadfast's knowledge of the covered lawsuits are undeveloped because Amtrak has

asserted that it requires additional discovery regarding these matters in order to respond to

Steadfast's motion, see Fed. R. Civ. P. 56(f), and has submitted an affidavit to that effect, see

Barth Decl. in Opp'n.

Steadfast's response to Amtrak's request for discovery asserts (1) that the evidence

presented by Amtrak thus far is insufficient to "discredit" the affidavits submitted by Steadfast,

see Def. Reply Mem. at 12-13, and (2) that certain apparently relevant documents will never be

produced because they are privileged, id. at 13.  While it is hardly clear that even the information

sought by Amtrak will provide evidence that could estop Steadfast from requiring that Amtrak

have provided notice, Steadfast has not adequately briefed the potential significance of any

favorable evidence that Amtrak might obtain regarding these matters.  The Federal Rules provide

that a party is excused from responding to a summary judgment motion where it shows that it

cannot present facts essential to justify its opposition.  See Fed. R. Civ. P. 56(f).  Accordingly,

the Court will defer a decision on this point until after discovery is completed, when a full record

can be presented and the parties can more specifically brief the significance of any information

uncovered in the course of such discovery.[8]

---

[8] Case law requires that a party resisting summary judgment pursuant to Fed. R. Civ. P.
56(f) must provide an affidavit that meets certain specified criteria.  See, e.g., Gualandi v.
Adams, 385 F.3d 236, 244 (2d Cir. 2004).  We do not parse Amtrak's affidavit here to see if it
has met these criteria, as Steadfast raised no objection on the ground that it fails to comply with
the case law requirements for such an affidavit.

In a renewed motion for summary judgment, the parties will be free to raise again any issues relating notice, or to raise any other issue not specifically disposed of in this decision.

IV.     CONCLUSION

For the foregoing reasons, Amtrak's motion for summary judgment (Docket # 85) should be denied and Steadfast's cross-motion for summary judgment (Docket #98) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Crotty.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: March 5, 2009
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

29

In a renewed motion for summary judgment, the parties will be free to raise again any issues relating notice, or to raise any other issue not specifically disposed of in this decision.

IV.     CONCLUSION

For the foregoing reasons, Amtrak's motion for summary judgment (Docket # 85) should be denied and Steadfast's cross-motion for summary judgment (Docket #98) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Crotty. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: March 5, 2009
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

29