UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 30, 2009

NATIONAL RAILROAD PASSENGER CORP.,

                           Plaintiff,                    06 Civ. 6072 (PAC) (GWG)

            - against -                    ORDER ADOPTING R&R

STEADFAST INSURANCE COMPANY, GREAT
AMERICAN E&S INSURANCE COMPANY,
RSUI INDEMNITY COMPANY, ZURICH
INSURANCE COMPANY, HARTFORD FIRE
INSURANCE COMPANY, AMERICAN
GUARANTY & LIABILITY INSURANCE
COMPANY, and ARCH SPECIALTY
INSURANCE COMPANY,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

       HONORABLE PAUL A. CROTTY, United States District Judge:

       This is a dispute between Plaintiff National Railroad Passenger Corp. ("Amtrak") and its insurer over the insurer's disclaimer of coverage for claims resulting from an accident at an Amtrak work site. Amtrak moves for summary judgment and seeks a declaration that Defendant Steadfast Insurance Company ("Steadfast") must indemnify and defend Amtrak against several underlying personal injury lawsuits. Steadfast cross-moves for summary judgment dismissing Amtrak's claims. On March 5, 2009, Magistrate Judge Gabriel W. Gorenstein issued a Report & Recommendation ("R&R"), recommending denial of both motions. Magistrate Judge Gorenstein recommended that the Court defer decision on Steadfast's motion pending further discovery on Steadfast's claim that it did not have notice of the underlying personal injury lawsuits. Having reviewed the R&R, as well as both parties' timely objections, the Court adopts Magistrate Judge

1

Gorenstein's recommendations and denies both motions for summary judgment pending further discovery.

## BACKGROUND

**I. Factual History**

The Court assumes familiarity with the underlying facts and procedural history of this case, explained in detail in Magistrate Judge Gorenstein's R&R. (See R&R at 1-12; Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co., 2009 WL 562610, *1-6 (S.D.N.Y. Mar. 5, 2009).) As the questions in this case involve the timing and precise wording of certain letters, contracts, and court filings, the Court will restate, in brief, some of the relevant underlying facts.[1]

In July 2004, Amtrak was working on two unrelated but physically proximate job sites. One site involved the installation of a fire standpipe system in the East River Tunnel in New York City (the "Standpipe Project"). Amtrak hired third-party contractors to undertake and manage the work on the Standpipe Project. Amtrak conducted the work itself at the second, unrelated site. Steadfast insured Amtrak for the work on the Standpipe Project under two policies, referred to throughout the parties' papers and Magistrate Judge Gorenstein's R&R as the "Bordereau RPP" and the "Crescent RPP." Steadfast did not insure Amtrak's work on the second project. During the early Saturday morning of July 10, 2004, an Amtrak employee lost control of a crane on Amtrak's second work site, located about a mile away from the Standpipe Project. The crane rolled downhill to the Standpipe Project, where it struck and injured several workers who were employed by either Amtrak or by Amtrak's third-party contractors.

Amtrak first reported the accident to Steadfast in an e-mail on Tuesday, July 13, 2004. (See Declaration of Patrick Barth in Support of Plaintiff's Motion for Summary Judgment

---

[1] The facts in this section are taken from the parties' Rule 56.1 Statements, Magistrate Judge Gorenstein's R&R, and all other relevant exhibits and affidavits in the record, unless otherwise specified.

("Barth Decl.") Ex. 9.)  On July 15, 2004, Amtrak notified Steadfast that one of the injured workers, Louis Cevasco, had obtained counsel, and Amtrak requested that Steadfast advise Amtrak as to Steadfast's "position with regard to coverage in this matter." (Id. Ex. 10.)  On July 20, 2004, Steadfast notified Amtrak that it was "proceeding to obtain additional information" and that it was reserving its rights and all conditions of the policy. (Id. Ex. 12.)

On August 5, 2004, Amtrak provided Steadfast with a copy of the personal injury lawsuit filed by Cevasco and his wife against Amtrak.  On August 18, 2004, Amtrak notified Steadfast that two more of the injured workers had obtained counsel. (Id. Ex. 16.)  On August 26, 2004, Steadfast sent a letter to Christopher Hoare, an attorney at the law firm of Taylor, Colicchio & Silverman, LLP, confirming the retention of Hoare's firm on behalf of Amtrak and directing Hoare to "undertake the defense of the insured in accordance with the terms and conditions of the policy issued by our company." (Id. Ex. 17.)  The letter also stated that Steadfast was "currently reviewing the coverage of this matter as it may be decide [sic] that another policy or policies covers the insured for this loss." (Id.)  Steadfast copied Amtrak on this letter.

On October 18, 2004, Amtrak asked Steadfast to inform Amtrak about which of the two insurance policies would provide coverage for Amtrak's potential liability.  On April 26, 2005, Steadfast notified Amtrak that it would not provide coverage for any liability from the Cevasco lawsuit under the Crescent RPP, nor "any other claims that may be made against Amtrak as a result of the July 10, 2004 collision." (Id. Ex. 21 at 6.)  Steadfast explained that its insurance coverage for the Standpipe Project only covered injuries arising out of acts or omissions at the job location, and that the acts or omissions must be related to the work described in the policy. Since the acts or omissions alleged in the Cevasco lawsuit only related to Amtrak's work at the second location, Steadfast refused coverage.  At the end of its letter denying coverage, Steadfast

3

stated that it "reserves the right to modify its position regarding coverage upon receipt of additional or different information regarding this matter." (Id.)  On May 13, 2005, Steadfast also denied coverage under the Bordereau RPP for essentially the same reasons. (Id. Ex. 23.)  As before, Steadfast stated that it reserved the right to modify its position upon receipt of further information.

On January 25, 2006, Amtrak requested that Steadfast reconsider its denials of coverage. Amtrak argued that Steadfast had misinterpreted the policies and governing law, and that there was an issue as to whether worker inattentiveness or negligence at the Standpipe Project site had contributed to the injuries there, thus triggering coverage for acts or omissions at the job site. (Id. Exs. 24, 25.)  On March 14, 2006, and March 22, 2006, Steadfast told Amtrak via letter that it would reevaluate its coverage position, and Steadfast requested further documentation from Amtrak.  Amtrak sent some of the requested documents, and Steadfast again denied coverage on May 31, 2006.  Steadfast stated that based on its investigation, none of the crew members at the Standpipe Project site had time to warn others about the runaway crane. (Id. Ex. 30 at 3.) Steadfast's position was that none of the possibly negligent acts or omissions occurred at the covered job site.  As before, Steadfast stated that it might change its coverage position based on receipt of new information.  On August 9, 2006, Amtrak filed a declaratory judgment action against Steadfast, demanding that Steadfast defend and indemnify Amtrak for liability from the injuries at the Standpipe Project.

The other injured workers from the Standpipe Project eventually filed lawsuits against Amtrak and the third-party contractors.  The Cevascos amended their complaint to include specific allegations of negligence at the Standpipe Project site on August 8, 2006, the day before Amtrak filed its declaratory judgment action against Steadfast.  Jugal Sood filed his lawsuit on

August 23, 2005, well before Amtrak filed its complaint against Steadfast. Joseph Adornetti and Girolamo Vitale filed on August 15, 2006. Edley Gayle filed on September 11, 2006.

Amtrak's complaint against Steadfast referred only to the original Cevasco complaint, and not to the Cevascos' second amended complaint. The Amtrak complaint did not refer to the Sood suit, either. On August 9, 2006, however, Amtrak filed a "Related Case Statement" that identified its complaint as related to the Cevasco case and noted that the Cevasco and Sood cases were consolidated.

**II. Magistrate Judge Gorenstein's R&R**

On March 5, 2009, Magistrate Judge Gorenstein issued his R&R recommending denial of Amtrak's motion for summary judgment and Steadfast's cross-motion for summary judgment. Magistrate Judge Gorenstein made the following recommendations with regard to Amtrak's motion:

1. As to the issue of coverage under the Crescent RPP or the Bordereau RPP and coverage for injuries relating to acts or omissions at the job site (i.e. the Standpipe Project), Amtrak was not entitled to a ruling that it has a right to indemnification under the policies merely based on the fact that the injuries took place on the job location by workers performing work described in the policies (R&R at 14-17);

2. As to the duty to defend, Steadfast was not put on notice of a duty to defend by the pleadings in the original Cevasco complaint, and Amtrak was incorrect in broadly arguing that any workplace injury triggers a duty to defend. Rather, the duty to defend is determined by "the actual allegations in the underlying pleading" (id. at 21);

3. With respect to Steadfast's motion for summary judgment on its defense that Amtrak failed to provide timely notice, Amtrak made a number of arguments that it was relieved

of the policies' notice requirement. Magistrate Judge Gorenstein made the following recommendations: Steadfast's letters denying coverage were not a repudiation of coverage, but rather a disclaimer, and Amtrak was not relieved of its duty to provide notice to Steadfast of the underlying lawsuits. (Id. at 23-27.) Further, Magistrate Judge Gorenstein rejected Amtrak's argument that its initial pleadings gave Steadfast notice of the various lawsuits, because Amtrak's initial pleading only mentioned the first Cevasco complaint (Id. at 27). Finally, Magistrate Judge Gorenstein found that further discovery was necessary, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to establish whether Steadfast had timely knowledge of the lawsuits through other sources, such as a claims manager, or whether the "unusual circumstances" of the case (i.e. hiring an attorney to defend Amtrak, Steadfast's invitation to submit further information, and the filing of the Sood lawsuit) might excuse Amtrak's notice requirement. (Id. at 27-29.)

Accordingly, Magistrate Judge Gorenstein denied both parties' motions for summary judgment and deferred a decision on whether Steadfast had timely knowledge through other sources until after further discovery. Amtrak and Steadfast filed objections to the R&R on April 6, 2009.

## DISCUSSION

### I. Standard of Review for a Report and Recommendation

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate's recommendations, the court is required to review the contested portions de novo. Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The court, however, "may adopt those portions of the R&R to which no objections have been made and

which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

**II. The Parties' Objections**

Amtrak lists 44 separate objections to Magistrate Judge Gorenstein's R&R (see "Objections to Report and Recommendation"), but its objections can be summarized in a few sentences: (1) Magistrate Judge Gorenstein misinterpreted the language of the insurance contracts and should have found that Steadfast was required to indemnify Amtrak; (2) Amtrak did in fact present Steadfast with information that should have alerted Steadfast that a failure-to-warn claim would be made against Amtrak for acts or omissions at the Standpipe Project site; (3) Magistrate Judge Gorenstein erred by looking only at the pleadings, rather than also examining extrinsic evidence, when determining if Steadfast knew of a possible claim for failure-to-warn at the Standpipe Project site; (4) Steadfast's denial letters were a repudiation of coverage, thus, Amtrak had no duty to continue notifying Steadfast of changes or additions in the personal injury lawsuits; and (5) Magistrate Judge Gorenstein erred in not finding that Steadfast waived a notice defense when it failed to claim such a defense in a Rule 16 Order signed by both parties on October 27, 2006.

Steadfast's objections are summarized as: (1) Amtrak's suit against Steadfast is now moot because of the Court's subsequent Order shifting total liability for the Standpipe Project injuries away from Amtrak and onto the third-party contractors at the site; (2) there was no need for further discovery on the issue of whether Steadfast had notice from other parties because notice can only come directly from Amtrak; and (3) Magistrate Judge Gorenstein improperly allowed further discovery under Rule 56(f) because Amtrak did not comply with the standards of the rule.

7

**III. Analysis**

As a threshold matter, on April 13, 2009, the Court requested additional briefing on whether the dispute was moot following the Court's March 23, 2009 ruling in Cevasco v. National Railroad Passenger Corp., 606 F. Supp. 2d 401 (S.D.N.Y. 2009). The Court adopted Magistrate Judge Gorenstein's recommendation that the designated contractors on the Standpipe Project, Crescent Contracting ("Crescent"), STV, Inc. ("STV"), Hatch MacDonald, Inc. ("HMM"), and STV/HMM, a joint venture of STV and HMM, must indemnify and hold Amtrak harmless for the personal injury claims stemming from the July 10, 2004 incident. Steadfast argues that Amtrak's coverage claim is now moot because the Court's ruling shifted all liabilities to Crescent and STV/HMM. Amtrak argues against mootness because it is not clear whether the available funds under the Crescent and STV/HMM agreements will adequately indemnify and defend Amtrak, or that STV/HMM will have any duty to indemnify and defend absent a finding of negligence against STV/HMM.

Courts may only review a dispute where a case or controversy exists. Fox v. Bd. of Trs., 42 F.3d 135, 140 (2d Cir. 1994) ("A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome . . . [t]he required legally cognizable interest has alternatively been described as a requirement that a plaintiff have a personal stake in the litigation.") (internal citations and quotations omitted). Until it is determined that the Crescent and STV/HMM policies adequately indemnify and defend Amtrak for the underlying actions, Amtrak still has an interest in determining Steadfast's responsibilities under the Crescent and Bordereau policies. Accordingly, the Court finds that Amtrak's coverage claim against Steadfast is not moot.

Magistrate Judge Gorenstein denied Amtrak's motion for summary judgment on the issue of the scope of Steadfast's indemnity coverage. He considered the language of the Crescent RPP and the Bordereau RPP, which provided coverage where there was some act or omission occurring at the job location,[2] and he considered whether an injury at the job location was sufficient, by itself, to trigger coverage. Magistrate Judge Gorenstein recommended that Amtrak is "not entitled to a ruling that it has a right to indemnification under the Polices merely based on the facts that injuries" occurred at the Standpipe Project site. (R&R at 17.) The Court agrees.

The Court also agrees with Judge Gorenstein's finding that Amtrak's first notice to Steadfast containing the original Cevasco complaint did not trigger Steadfast's duty to defend because the complaint did not allege a failure-to-warn claim at the Standpipe Project site. (R&R at 21.) Amtrak makes a number of arguments that would relieve it of requirements in the policy to provide notice of the later personal injury lawsuits and show that it has complied with the policies. The Court agrees with the Magistrate Judge's recommendations on these arguments.

Magistrate Judge Gorenstein, however, reserved ruling on several of Amtrak's notice-defense claims. He specifically left open the question, pending further discovery, of whether Steadfast had received notice of the failure-to-warn claims from other sources, or whether the unique circumstances of the case (i.e. Steadfast's hiring of a lawyer to "undertake the defense" of Amtrak, Steadfast's disclaimer of coverage that included an invitation to provide more

---

[2] The Crescent RPP and the Bordereau RPP state that the policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . only if . . . the 'bodily injury' or 'property damage' arises out of acts or omissions at the 'job location', which are related to or are in connection with the 'work' described in the Declarations." (See Steadfast's Rule 56.1 Statement ("Def. 56.1") Exs. 3, 4.)

9

information, and the submission of the Sood lawsuit) excused Amtrak's compliance with the Policy's notice provisions.[3] (R&R at 27-28.)

Discovery is incomplete and summary judgment cannot be granted. The Court will wait until Magistrate Judge Gorenstein reviews the further discovery and the parties' subsequent briefings. Once Magistrate Judge Gorenstein rules on the waiver-of-notice issues, he will issue his final Report and Recommendation and the parties may object as appropriate. Accordingly, the Court adopts Magistrate Judge Gorenstein's R&R in its entirety, and Amtrak and Steadfast's motions for summary judgment are DENIED. The Clerk of the Court is directed to close out motions docketed at #85 and #98. The order of reference to Magistrate Judge Gorenstein is ongoing.

Dated: New York, New York
       June 30, 2009

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge

---

[3] The Court agrees with Judge Gorenstein's analysis that Steadfast did not repudiate coverage. (R&R at 23.) An insurer repudiates coverage and therefore waives its notice defense when the insurer "distinctly, unequivocally, and absolutely refused to perform its obligations under the policy." See Varda, Inc. v. Ins. Co. of N. Am., 45 F.3d 634, 638 (2d Cir. 1995). Steadfast left open the possibility that it would reopen review if Amtrak provided additional information.

10